If this is to be regarded as an executed contract of sale, without sample or warranty, then the acceptance of the goods purchased — without objection to their quality or condition at the time of their delivery, or within such reasonable time afterwards as was sufficient to examine the same and ascertain their condition — would be regarded, I think, according to the weight of authority, as an assent on the part of the purchaser to the merchantable character of the goods, and a waiver of defects therein.
In such cases the title passes, and the purchaser is presumed to be satisfied with the goods because he makes no objection to them after opportunity for examination.
If, in the case of an executed contract, there be an express warranty or undertaking accompanying the sale and delivery of the goods, that they are of a certain quality or condition, this agreement is obligatory upon the parties, and is not merged in the act of delivery and acceptance, because it is simultaneous with it and independent of it; and the very object of it is to preclude the necessity of an instant examination, and to preserve to the purchaser his right to insist upon the performance of the agreement, and to compensation for its non-performance. (Muller
v. Eno, 14 N.Y. 597; Waring v. Mason, 18 Wend. 425.)
The parties agree that this is not an executed contract. Although a portion of the price was paid at the time, and the crop was then growing and susceptible of sale, yet there were additional things to be done on both sides before the title would become perfect or the delivery complete. The residue of the purchase money was to be paid on the part of the vendee; and the tobacco was to be harvested, properly cured and boxed, and delivered, on the part of the vendor. These were acts to be done on the *Page 369 
part of the vendor, absolutely within his power to perform — acts to be done in the future — of the performance or non-performance of which he would have perfect knowledge, but of which the purchaser would be wholly or comparatively ignorant, even at the time of delivery, and in regard to which it was both natural and reasonable that he should desire to protect himself by the express covenant of the vendor.
The important question is, was there a warranty or express undertaking, on the part of the vendor, that these acts should be performed by him, and that the tobacco should be of a certain quality, and in a certain condition, at the future period of delivery; and was this contract broken or its execution waived. The averments in the complaint are, in effect, that there was such express warranty and undertaking, and such was the offer of proof. We cannot, therefore, assume that the evidence would have come short of it.
It is said, indeed, that the express warranty thus made is no more in effect than a warranty that the article was merchantable, and that the merchantable quality of the article is implied in every executory contract for the sale of personal property. If this were conceded, it would not obliterate the distinction between the effect of an express warranty and that of a mere legal presumption as to the condition or description of the article. The legal presumption being that the parties intended a sale of an article of a merchantable character, the purchaser would not be bound to accept any other; but if he chose, deliberately, to accept an inferior article as a substantial compliance with the contract, or as satisfactory to him, such acceptance would be binding upon him, and would be regarded in law as a waiver of strict performance. Not so, however, with an express warranty. This is an express undertaking that the article sold possesses certain qualities or characteristics, and this undertaking must be made good. It is something *Page 370 
more than a mere description of the article — it is a guaranty
of what shall be its future condition at the time of delivery. It is something independent of, and not indispensable to, the mere act of sale and delivery, and is not merged in the latter. It is an express undertaking that the property sold shall have certain qualities and conditions; and the design of the parties, and the object of the agreement, is that the purchaser may by action enforce a compliance with such an agreement or obtain damages for its violation. It may be that for perfectly patent defects, obvious to the senses — as in the case of warranty on the sale of a horse — the warranty would not cover them, upon the ground that where there is opportunity for examination, especially prior to the completion of the contract of sale manifest and conspicuous defects would not be regarded as within the protection of the agreement, upon the ground that they cannot be presumed to have been intended by the parties to have been embraced within its spirit and operation. I think, also, the case is stronger for the plaintiff in that it is an agreement by the defendant that he will himself perform certain acts in regard to the property, making it more valuable, on which the plaintiff has a right to rely, and for the performance of which he may well be supposed to have reposed implicit confidence in the promise of the defendant.
It is said, also, that when goods of a certain quality areordered, and when offered for delivery they are not of such quality, they must then be rejected or the purchaser will be remediless. This, as a general proposition, is correct, where there has been an opportunity for examination; but it is upon the ground that it is rather the execution of an order than the making of an independent contract with mutual stipulations and obligations; that the articles when thus tendered are tendered as a compliance with the order, and as being of the quality ordered, and an acceptance of them without qualification or objection is a presumed assent *Page 371 
on the part of the purchaser that they are of the quality ordered or declared; that if they were otherwise, the party having an opportunity for inspection would not have accepted them, and by his silence or non-objection implied his concurrence with the implied representation of his agent or the vendor that they were of the quality ordered. In such cases, the order for and the tender of the goods, taken together, amount to a description of them merely — of the truth of which each party must satisfy himself at the time of delivery and acceptance, and not to a positive and express engagement, on the part of the seller, that they do and shall possess the required qualities.
The rights and remedies heretofore alluded to, as incident to and connected with an express warranty, apply equally, so far as I can discover, according to the course of adjudication or the reason of the thing to executed and executory contracts. They arise out of the fact that the warranty is a distinct and independent thing from the mere contract of sale — is not a necessary accompaniment of the latter, nor essential to its validity or existence, and was designed by the parties to confer distinct and independent rights. It is not, therefore, to be confounded with the contract of sale, nor with the act of delivery; nor is it, nor was it intended to be, merged in either. Its very object was to survive the act of delivery and to be independent of it, and to confer rights which might be subsequently enforced or established. Its essence consisted, not in a mere description of qualities existing in or attached to the article sold, the presence of which was a condition precedent to the obligation to accept, which condition was waived by an unqualified act of acceptance, but in the personal responsibility of the vendor for the truth of his undertakings, which was designed to be equivalent in force and duration to other engagements of a like description — to outlive the mere act of acceptance or passing of the title, and the breach of which would not only furnish just occasion *Page 372 
for a refusal to accept, but a cause of action for a breach of contract if the purchaser chose to receive the article sold, and rely on the personal engagement of the vendor.
There was, therefore, no necessity for a refusal to accept the tobacco when delivered or tendered, for two reasons; first, because it was probably impossible immediately to determine its condition, and second, because the parties had contracted for an independent remedy, notwithstanding the act of acceptance. Mere receipt or acceptance of articles purchased, though not answering the conditions of the contract, never destroys the obligations of an express warranty. All contracts of sale with warranty contain two express and independent stipulations: 1st. An agreement for the transfer of the title and ownership from the vendor to the vendee. 2d. An agreement that the article sold has certain qualities and conditions. These engagements are distinct and independent, and are not to be confounded. The one may be satisfied by the absolute delivery to the purchaser of the article sold. The other may, notwithstanding such delivery, be wholly unperformed. I am not aware of a single adjudicated case where the contract of warranty is held to have been merged in the act of delivery or acceptance. In some instances the act of acceptance may possibly be evidence for the consideration of the jury on the question of performance of the warranty, or rather of the interpretation of the contract. Thus, an acceptance of a horse warranted sound, who has certain defects, may, perhaps, if the defects are slight, be evidence that the parties did not regard them as amounting to unsoundness, or, if plainly visible and palpable, as not being intended to be warranted against, upon the ground that the parties could not have designed them to be covered by the warranty. Beyond this, I can not conceive that the act of acceptance can have any effect upon the contract of warranty. *Page 373 
Nor was the purchaser bound to return the goods or notify the vendor of the defects, for: 1st. The vendor is presumed to know them because he had the opportunity for examination before delivery, and in the case at bar must inevitably have known them. 2d. It is doubtful whether there is any right to return the goods, in any case, except where the right is specially reserved in the contract, except in the case of fraud which nullifies the contract itself. (Voorhees v. Earl, 2 Hill, 288; Cary v.Gruman, 4 Hill, 625; Muller v. Eno, 4 Kernan, 601.) 3d. The very object of the warranty is to confer a right of action for its breach, and not to compel the parties to perform an act, to wit: the return of the goods, or a notification of defects, not stipulated in the contract. (See Beirne v. Dord, 1 Selden, 99.)
I think these propositions are substantially maintained in the case of Muller v. Eno (14 N.Y. 597), decided in this court, and do not require farther illustration.
These considerations seem to me conclusive as to the plaintiff's right to recover.
1. There was a contract for a present sale of the tobacco then growing and owned by the defendant, at a specified price, a part of which was paid at the time. It may be that the title did not then pass, for there were three acts to be done on the part of the defendant, but the defendant could not lawfully sell to another. The tobacco having thus become equitably the plaintiff's property, he had a right to receive it and rely on the covenant of warranty, if it did not answer the representations made of its quality and condition, or if the defendant did not perform upon it the labor which he had contracted to do.
2. There was an express warranty of its future qualities and condition. Work was to be done upon it by the defendant. It was to be properly harvested and properly cured and properly boxed. It was not to be wet, sweaty, or rotten; it was not to be deteriorated nor to shrink in quantity. *Page 374 
All this was under the control of the defendant, and was dependent upon his future acts. He was obliged to perform the operation in a workman-like manner. He did not do so, and for this an action lay against him.
3. Notwithstanding the contract was executory and the title did not pass, an action lay against the defendant. The contract of warranty was independent of and not an essential constituent element of the contract of sale. They were separate and independent, and both could stand. The contract of sale was performed by a delivery of the property. The payment of the price was a performance on the part of the purchaser. But the contract of warranty remained open, and its performance or violation depended upon the condition and qualities of the property. The enforcement of this contract need not be made instanter. It was at the option of the party aggrieved to enforce it when he thought proper, within the period covered by the statute of limitations. It was the design of the parties to allow this part of the contract to survive the act of delivery of the article sold, and to authorise an action for the breach of the covenant, notwithstanding the delivery of the property.
In any reasonable view which can be taken of this contract as alleged, I think the plaintiffs had a good cause of action, and that the judgment should be reversed and a new trial granted, with costs to abide the event.
MULLIN, J., concurred with HOGEBOOM, J. All the other judges being for affirmance, judgment affirmed. *Page 375